UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

DANIEL A. LEVI, *a.k.a. DRAKEFORD LEVI*,

                         Plaintiff,

         - against -

RSM MCGLADREY, INC.,

                         Defendant.
-------------------------------------------------------------x

**OPINION AND ORDER**

12-cv-8787 (ER)

Ramos, D.J.:

        At its core, this employment discrimination case arises out of the alleged wrongful

termination of, and subsequent retaliation against, *pro se* plaintiff Daniel A. Levi ("Plaintiff").

Docs. 2, 18, 28.  Plaintiff alleges that he was discriminated against on the basis of sex, race and

color, ultimately resulting in both the termination of his employment and an improper denial of

the medical benefits to which he was entitled under the Consolidated Omnibus Budget

Reconciliation Act ("COBRA").  He therefore brings suit, pursuant to Title VII of the Civil

Rights Act of 1964 ("Title VII") and the New York State Human Rights Law (the "NYSHRL"),

against his former employer, McGladrey, LLP. ("Defendant").[1]  Plaintiff also asserts a claim

under the Equal Pay Act (the "EPA").

        The case is currently proceeding pursuant to Plaintiff's Second Amended Complaint.

Doc. 28 ("Second Am. Compl.").  Defendant has moved to dismiss that complaint pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Doc. 30, arguing that Plaintiff's federal

claims are time-barred and that the NYSHRL claim is precluded by Plaintiff's election of

remedies.  In addition to filing an opposition to Defendant's motion, Doc. 36 ("Pl.'s Opp'n"),

---

[1] Defendant notes that it is incorrectly identified in the case caption by its former name, RSM McGladrey, Inc.  *See* Def.'s Mem. of Law in Supp. at 1 n.1.  The Court will direct that the case caption be updated accordingly.

Plaintiff submitted a letter that the Court construed as a motion to further amend his complaint in order to name H&R Block, Inc. ("H&R Block") as a co-defendant in the case.  Doc. 34 (the "Amendment Letter").  The Amendment Letter indicates that Plaintiff also intends to bring a claim against both Defendant and H&R Block under the Employee Retirement Income Security Act of 1974 ("ERISA"), based on the denial of his COBRA benefits.  Defendant opposes both amendments.

For the reasons discussed below, Defendant's motion to dismiss the federal and state discrimination claims is GRANTED in full.  Plaintiff's motion to amend is GRANTED in part and DENIED in part.  Plaintiff may amend the complaint solely to the extent that he seeks to bring an ERISA claim against Defendant, in its capacity as plan administrator, to recover benefits under 29 U.S.C. § 1132(a)(1)(B) (or for certain alternative forms of relief, as discussed in more detail below).

## I.      Factual Background[2]

The following facts are based on the allegations in the Second Amended Complaint, which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012) (evaluating a Rule 12(b)(6) motion); *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)) (evaluating a Rule 12(b)(1) motion).

Plaintiff is an African American-Native Indian American male.  *See* Second Am. Compl. at 11.  He began working for Defendant on a temporary basis in February 2008, before being

---

[2] Plaintiff has submitted a detailed factual account of the events leading up to and following his termination, along with a number of supporting documents and exhibits.  The Court has reviewed those materials in their entirety.  This factual narrative does not purport to reflect the full breadth of Plaintiff's submissions, but rather is intended to provide appropriate factual context for the ensuing legal discussion.

retained as a direct hire three months later.  *Id.* at 12.  While working for Defendant, Plaintiff

received positive evaluations.  *Id.*  However, during a brief April 4, 2009 meeting with

Defendant's human resources department, Plaintiff was informed that a female employee had

accused him of wearing dungarees, being violent, and engaging in inappropriate sexual conduct,

accusations that Defendant "completely and unequivocally denied."  *Id.* at 27-28.

Plaintiff maintains that, in actuality, he was the one who was subjected to a "consistent

hostile work environment" fostered by his female colleagues.  *Id.* at 22, 25-26.  He also alleges

that, while employed by Defendant, he was paid less than Defendant's female employees.  *Id.* at

36-37.  Nevertheless, Plaintiff received a termination letter, dated April 30, 2009, indicating that

his employment would end effective May 1 of that year.  *Id.* Ex. F.[3]  The letter did not state a

specific cause for the termination, and Plaintiff was successfully able to obtain unemployment

benefits.  *See id.* at 14-15, Ex. F, I.  According to Plaintiff, his termination served as retaliation

for having informed management about the hostile work environment to which he was being

subjected.  *See id.* at 34.

Subsequent to his termination, on July 6, 2009, Plaintiff submitted a COBRA application

pursuant to the instructions he received from Defendant.  *Id.* at 15, Ex. J.  The application was

returned the following week, with a notation indicating that his misconduct rendered him

ineligible for COBRA.  *Id.* at 15, Ex. K.  A follow-up letter arrived the next day, July 14, 2009,

indicating that Defendant was not required to offer Plaintiff COBRA coverage because he had

been terminated for "gross misconduct."  *Id.* at 15, Ex. M.  On August 16, 2009, Plaintiff

---

[3] The narrative portion of the Second Amended Complaint misstates the date of the letter as April 29, 2013.  *See*
Second Am. Compl. at 14.

submitted a written request for an appeal.  *Id.* at 17, Ex. P.  That appeal was denied by letter dated November 4, 2009.  *Id.* Ex. L.

Plaintiff alleges that, with the assistance of his attorney, he repeatedly sought information and documentation relating to the accusations levied against him and the consequent denial of his COBRA benefits.  *See, e.g.*, *id.* at 17-19.  He maintains that the denial of benefits constituted "a continuing part of the discrimination and retaliation" against him.  *Id.* at 17.  On April 26, 2010, he dual-filed an administrative complaint with the New York State Division of Human Rights (the "NYSDHR") and the United States Equal Employment Opportunity Commission (the "EEOC").  *Id.* at 13.  It was only on June 2, 2010, when Defendant submitted its response to the NYSDHR, that Plaintiff received a written summary of his alleged misconduct.  *Id.* at 18.

The NYSDHR dismissed the administrative complaint based on a finding of no probable cause, and that finding was adopted by the EEOC, which issued Plaintiff a right-to-sue letter.  *Id.* at 20-21, Ex. V, X.  This lawsuit followed, with Plaintiff's original Complaint being filed on December 3, 2012.  Doc. 2.

## II.   Plaintiff's State Law Claim Is Barred by His Election of Remedies

Defendant argues that Plaintiff is precluded from asserting a claim under the NYSHRL because he elected to pursue that claim administratively before the NYSDHR.  *See* Def.'s Mem. of Law in Supp. at 4-6.  "Because the election of remedies limitation divests a federal court of jurisdiction to decide [a] state law claim, a motion to dismiss on this ground is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1)."  *Skalafuris v. City Univ. of N.Y.*, No. 09 Civ. 5693 (SAS), 2010 WL 1050299, at *2 (S.D.N.Y. Mar. 22, 2010) (footnote omitted), *aff'd sub nom. Skalafuris v. City of N.Y.*, 444 F. App'x 466 (2d Cir. 2011).

4

### A.  Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits, may be considered by the court to resolve the disputed jurisdictional fact issues.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true, but does not draw inferences from the complaint favorable to the plaintiff. *Attica Cent. Sch.*, 386 F.3d at 110 (citing *Drakos*, 140 F.3d at 131).

"Despite the lenient standards with which courts review *pro se* complaints, *pro se* plaintiffs must establish subject matter jurisdiction."  *Hill v. Douglas*, No. 09 Civ. 4259 JS/ARL, 2010 WL 395817, at *2 (E.D.N.Y. Jan. 15, 2010).

### B.  Discussion

The NYSHRL provides, in relevant part, as follows:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . *unless such person had filed a complaint hereunder or with any local commission on human rights* . . . .

N.Y. Exec. Law § 297(9) (McKinney) (emphasis added).  In other words, a plaintiff seeking to bring a discrimination claim under the NYSHRL is given a choice:  he can either proceed in court or pursue an administrative complaint before a local human rights commission, but he cannot do both.  Plaintiff contends that the statute merely limits his ability to bring *concurrent* administrative and judicial claims.  *See* Second Am. Compl. at 20.  That position is incorrect. *See York v. Ass'n of the Bar*, 286 F.3d 122, 127 (2d Cir. 2002) ("[B]y the terms of the statute . . ., [NYSHRL] claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court." (citing *Moodie v. Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 882 (2d Cir.1995))); *Fitzgerald v. Signature Flight Support Corp.*, No. 13 Civ. 4026 (VB), 2014 WL 3887217, at *5 (S.D.N.Y. Aug. 5, 2014) ("[O]nce a plaintiff elects to pursue his claims before the NYSDHR, a federal district court is barred from later hearing his case.").[4]

It is undisputed that, in the case at bar, Plaintiff filed a complaint with the NYSDHR prior to bringing his federal lawsuit.  His election of remedies therefore divested this Court of subject matter jurisdiction over his NYSHRL claim.[5]  That claim will therefore be dismissed.

---

[4] There are two exceptions to the election of remedies rule.  *See Skalafuris v. City Univ. of N.Y.*, No. 09 Civ. 5693 (SAS), 2010 WL 1050299, at *2 (S.D.N.Y. Mar. 22, 2010), *aff'd sub nom. Skalafuris v. City of N.Y.*, 444 F. App'x 466 (2d Cir. 2011).  The first exception applies when the NYSDHR dismisses the claim for administrative convenience, and the second applies when the claim is filed with the NYSDHR only by way of an automatic referral from the EEOC.  *See York v. Ass'n of the Bar*, 286 F.3d 122, 127 n.2 (2d Cir. 2002).  Since Plaintiff filed his administrative complaint directly with the NYSDHR and that complaint was thereafter dismissed for lack of probable cause, neither exception applies here.

[5] Although Plaintiff attempts to portray his case as an appeal of the NYSDHR's decision, this Court would lack jurisdiction over any such appeal.  *See York*, 286 F.3d at 127 (citing N.Y. Exec. Law § 298) ("[O]nce a plaintiff brings a case before the NYSDHR, he or she may appeal only to the Supreme Court of State of New York.").

### III.    Plaintiff's Federal Claims Are Time-Barred[6]

With respect to Plaintiff's federal claims, Defendant argues that the lawsuit is barred because Plaintiff did not file his administrative complaint within the applicable limitations periods.  *See* Def.'s Mem. of Law in Supp. at 6-12.  Such an argument is properly presented in the context of a Rule 12(b)(6) motion for failure to state a claim.  *See, e.g.*, *Sinha v. N.Y.C. Dep't of Educ.*, 127 F. App'x 546, 546 (2d Cir. 2005) (summary order) (affirming a Rule 12(b)(6) dismissal for failure to comply with the 300-day limitations period applicable to Title VII claims); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) (noting that a statute of limitations defense is properly raised under Rule 12(b)(6)).

#### A.  Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Koch*, 699 F.3d at 145.  However, the Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551).  "To survive a motion to dismiss, a complaint must

---

[6] At various points in the Second Amended Complaint, it appears that Plaintiff is attempting to allege claims against certain of Defendant's individual employees.  *See, e.g.*, Second Am. Compl. at 23, 27 (referring to "Defendant Rosen" and "Defendant Back").  However, there is no individual liability under either Title VII or the EPA.  *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (addressing Title VII); *Suares v. Cityscape Tours, Inc.*, No. 11 Civ. 5650 (AJN), 2014 WL 969661, at *14 (S.D.N.Y. Mar. 12, 2014) (addressing both Title VII and the EPA).  While the NYSHRL does allow for individual liability in certain situations, *see* N.Y. Exec. Law § 296(6) (McKinney), the election of remedies discussion in the preceding section applies with equal force to any claims against individual defendants in this case.  *See, e.g.*, *Benson v. N. Shore-Long Island Jewish Health Sys.*, 482 F. Supp. 2d 320, 326 (E.D.N.Y. 2007) (citing *Lyman v. City of N.Y.*, No. 96 Civ. 2382 (PKL), 1997 WL 473976, at *4 (S.D.N.Y. Aug. 20, 1997)) (noting that, even if individual defendants were not named in the earlier administrative complaint, the election-of-remedies doctrine nevertheless precludes a claim against them).  Therefore, any attempt to assert claims against individual defendants would fail as a matter of law.

contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In the case of a *pro se* plaintiff, the Court is obligated to construe the complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret the claims as raising the strongest arguments that they suggest.  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citing *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)).  The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## B.  Discussion

### i.  Title VII

"Timely filing of a charge of discrimination with the EEOC is a prerequisite to filing a Title VII complaint in federal court."  *Stathatos v. Gala Res., LLC*, No. 06 Civ. 13138 (RLC), 2010 WL 2024967, at \*6 (S.D.N.Y. May 21, 2010).  In a state such as New York, which has an administrative body empowered to review employment discrimination claims, a Title VII claim must be brought within three hundred days of the alleged unlawful conduct in order to be considered timely.  *See* 42 U.S.C. § 2000e-5(e)(1) ("[I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . ."); *see also Harris v. City of N.Y.*, 186 F.3d 243, 247 n.2 (2d Cir. 1999) (noting that "the existence of [the NYSDHR] makes New York a so-called deferral state for Title VII" purposes, such that the 300-day limitations period governs).  "A claim is time barred if it is not filed within these time limits."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

Here, there is no dispute that Plaintiff's termination was effective May 1, 2009.[7]  In order to be timely, then, Plaintiff's administrative complaint needed to be filed within three hundred

---

[7] Technically, the 300-day period would have begun to run on the date Plaintiff received his termination letter.  *See Zebedeo v. Martin E. Segal Co.*, 582 F. Supp. 1394, 1411 (D. Conn. 1984) ("This time period begins to run at the time the decision to terminate is 'made and communicated to' the grievant." (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980))); *see also Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (finding that the plaintiff's EEOC complaint failed to satisfy the 300-day requirement where it was not filed until 357 days after she received notice of her pending termination).  However, it is not immediately clear from the record when

days of that date, or by February 25, 2010.  However, it is undisputed that Plaintiff did not file

his complaint until April 26, 2010, two months after the close of the limitations period and 360

days after his termination.  Accordingly, Plaintiff's claim was not timely filed with the EEOC

and, consequently, must be dismissed as time-barred.[8]

In opposing Defendant's motion, Plaintiff argues that the limitations period should be

tolled because Defendant engaged in "continuous acts of discrimination, retaliation, and

wrongful and unlawful acts of fraudulent concealment."  Second Am. Compl. at 13.  A

continuing discrimination argument, however, cannot save his wrongful termination claim.  The

Supreme Court treats wrongful termination of employment as a "discrete" discriminatory act and

has held that "discrete discriminatory acts are not actionable if time barred, even when they are

related to acts alleged in timely filed charges."  *Morgan*, 536 U.S. at 113-14.[9]

Plaintiff's fraudulent concealment argument similarly fails to save the time-barred federal

claim.  *See, e.g.*, Second Am. Compl. at 18-19.  Because the 300-day limitations period for filing

an EEOC charge is a defense and not a jurisdictional requirement, the application of that

---

Plaintiff actually learned of his pending termination.  *Compare* Second Am. Compl. at 14 (referencing a letter
received April 29, 2013, though presumably meaning April 29, 2009), *with id.* Ex. F (letter dated April 30, 2009).
Because the two-day disparity in the calculation will not affect the outcome of the analysis, the Court utilizes the
May 1, 2009 termination date for the sake of clarity (and notes that, in so doing, it potentially tips the scales in
Plaintiff's favor via a slight overestimation of the limitations period).

[8] The fact that Plaintiff received a right-to-sue letter adopting the NYSDHR's findings—rather than dismissing the
complaint as untimely—does not preclude the Court from independently determining that the administrative filing
was, in fact, untimely.  *See Leavy v. N.Y.C. Transit Auth.*, No. 02 Civ. 4598 (SJ), 2004 WL 2567210, at *4
(E.D.N.Y. Nov. 2, 2004), *aff'd*, 145 F. App'x 707 (2d Cir. 2005).

[9] The outcome is different with respect to hostile work environment claims, wherein the entire series of acts giving
rise to the hostile work environment is treated as a single adverse employment action.  *See Morgan*, 536 U.S. at 115-
21.  However, to the extent the pleadings allege such a claim, the hostile work environment necessarily ended on the
date Plaintiff was terminated.  As a result, none of the alleged discriminatory acts contributing to the hostile work
environment could have occurred within the limitations period, and any such claim is therefore time-barred.

limitations period "is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).  In order for a limitations period to be tolled by virtue of fraudulent concealment, a plaintiff must plead that "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch*, 699 F.3d at 157 (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999)) (internal quotation marks omitted); *see also Mahoney v. Beacon City Sch. Dist.*, 988 F. Supp. 395, 400 (S.D.N.Y. 1997) (quoting *Butala v. Agashiwala*, 916 F. Supp. 314, 319 (S.D.N.Y. 1996)) (applying this standard in the context of a federal discrimination case).

  Here, the allegations in the Second Amended Complaint expressly contravene any argument that this doctrine should apply to Plaintiff's claims.  The crux of Plaintiff's position is that, by not disclosing the details of Plaintiff's purported misconduct, Defendant "stonewalled and prevented Plaintiff from discovering the cause of action that gave Plaintiff the right to judicial relief."  Second Am. Compl. at 18-19.  However, Plaintiff specifically alleges that a meeting—albeit a short one—was held on April 4, 2009, less than a month prior to Plaintiff's termination.  *See id.* at 27.  At that meeting, Plaintiff was apprised of the complaints levied against him, which he "completely and unequivocally denied."  *Id.*  Nothing in the pleadings suggests that Plaintiff was given any reason to believe that his employment was terminated for a different reason, nor does Defendant's eventual disclosure of *additional* allegations of misconduct (all of which Plaintiff also denies) speak to Plaintiff's ability to have discerned the purported wrongful nature of his termination.  Indeed, if Plaintiff is correct, the subsequent disclosures represented a further cover-up of conduct that Plaintiff already—and

independently—knew to be discriminatory. *See, e.g.*, *id.* at 35 (alleging that his termination

served as retaliation for his prior complaints about discriminatory conduct and "hostile work

conditions").[10]  Even if the later-disclosed information provided additional *evidence* of

conspiratorial misconduct, fraudulent concealment requires that the nature of the legal claim

itself be hidden from view.

Because Plaintiff believed his termination to be baseless from the outset and was aware

of at least some of the accusations levied against him—and because his belief that he was

discriminated against arose by virtue of separate experiences he had while employed by

Defendant—Plaintiff's failure to file his claim within the 300-day statutory period cannot be

attributed to Defendant's conduct.  Accordingly, the limitations period is not tolled, and

Defendant's Title VII claims must be dismissed as time-barred.[11]

---

[10] The very fact that Defendant's June 2, 2010 statement was written in response to Plaintiff's NYSDHR complaint belies any notion that he was prevented from "discovering the cause of action" prior to that date, as the filing of the administrative complaint clearly indicates that Plaintiff was already aware of the alleged malfeasance.

[11] Plaintiff also suggests that the denial of COBRA benefits based on termination for gross misconduct was itself a separate instance of discriminatory conduct.  *See* Second Am. Compl. at 35 ("It took Defendant less than 24 hours to wrongfully frame two (2) false charges of misconduct and "Gross misconduct" for Plaintiff's causes for termination, which were intentional, willful and deliberate, (*See:  Exhibit CC*) and constituted Defendant's <u>retaliation</u> and further discrimination in violation of federal laws." (emphasis in original)); *see also id.* at 38 (requesting damages for "the losses suffered due to the harm caused by the Defendant's denial of Plaintiff's Cobra Health Benefits and an appeal hearing").  However, the Second Circuit has held that discriminatory conduct by an employer is actionable under Title VII only if the complained-of actions are "injurious to *current* employment or the ability to *secure future* employment."  *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) (emphasis in original) (citing, *inter alia*, *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996)); *see also Thompson v. Morris Heights Health Ctr.*, No. 09 Civ. 7239 (PAE) (THK), 2012 WL 1145964, at *5-6 (S.D.N.Y. Apr. 6, 2012) (collecting cases that illustrate this limitation on post-employment retaliation claims).  Here, any harm resulting from the denial of COBRA benefits clearly occurred *after* Plaintiff's termination, and there is no suggestion that the loss of insurance coverage in any way impacted Plaintiff's ability to find new work.

### ii.  The EPA

Plaintiff alleges that Defendant violated the EPA by paying him less than female employees doing similar work.  Second Am. Compl. at 37.  Plaintiff concedes, however, that the statute of limitations on such claims is two years, extended to three in cases of willful discrimination of the type alleged here.  *See id.*; *see also* 29 U.S.C. § 255(a) (defining the applicable limitations period).  This limitations period is not tolled during the pendency of an NYSDHR or EEOC investigation.  *See, e.g.*, *Manko v. Deutsche Bank*, No. 02 Civ. 10180 (TPG), 2004 WL 574659, at *7 (S.D.N.Y. Mar. 22, 2004) ("Equal Pay Act claims are not required to be administratively exhausted prior to filing suit, so there is no reason why plaintiff could not have filed these claims before the conclusion of the NYSDHR and EEOC investigations into her other claims."), *aff'd*, 354 F. App'x 559 (2d Cir. 2009).  Here, Plaintiff was terminated on May 1, 2009.  Even assuming that he received his last paycheck one month later, on June 1, 2009, the statute of limitations would have run on June 1, 2012.  Plaintiff did not bring this lawsuit until December 2012.  Any EPA claim is thus time-barred.[12]

## IV.  Plaintiff's Motion to Amend

In the Amendment Letter, which the Court has construed as a motion to further amend the complaint, Plaintiff seeks to (1) add H&R Block as an additional defendant in this action and

---

[12] The disparate pay claim fares no better if brought directly under Title VII.  *See* Second Am. Compl. at 37 (referencing an "Equal Pay Act claim under Title VII").  As discussed, Plaintiff's administrative complaint was filed 360 days after his employment was terminated, or sixty days beyond the statutory limitations period applicable to Title VII claims.  In order for Plaintiff's claim to be timely, then, Plaintiff would need to allege discriminatory conduct occurring at least sixty days after his termination.  There is nothing in the pleadings to suggest—nor would it be reasonable to infer—that Plaintiff was still being paid by Defendant sixty days after he was terminated.  Thus, any Title VII claim for unequal pay is barred by the 300-day limitations period.

(2) interpose a claim under ERISA.[13]  The former application is denied, and the latter is granted to a limited extent.

### A.  Legal Standard

Parties are entitled to amend their pleadings once, as a matter of course, within 21 days after serving the pleading or, if a responsive pleading is required, within 21 days after service of a responsive pleading or a Rule 12 motion.  Fed. R. Civ. P. 15(a)(1).  A party may not otherwise amend its pleading without either the written consent of the opposing party or leave of the court.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires."  *Id.*  The Supreme Court has held that it would be an abuse of discretion, "inconsistent with the spirit of the Federal Rules," for a district court to deny leave without some justification, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Second Circuit has stated that a court should allow leave to amend a pleading unless the non-moving party can establish prejudice or bad faith.  *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Motions to amend are ultimately within the discretion of the district courts, *Foman*, 371 U.S. at 182, and they should be handled with a "strong preference for resolving disputes on the merits."  *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir.

---

[13] Plaintiff has suggested that neither of these points constitutes an "amendment" to the pleadings, as both could be inferred from the preexisting allegations.  As will be discussed, however, the futility analysis applied to a motion to amend is the same as the standard used to evaluate a Rule 12(b)(6) motion to dismiss.  It is therefore of no practical import, for purposes of this case, whether these issues are treated as amendments or as preexisting claims that Defendant now seeks to dismiss.

2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)) (internal quotation marks omitted). Although permissive, the standard for leave to amend "is by no means 'automatic.'" *Billhofer v. Flamel Technologies, S.A.*, No. 07 Civ. 9920, 2012 WL 3079186, at *4 (S.D.N.Y. July 30, 2012) (quoting *Klos v. Haskel*, 835 F. Supp. 710, 715 (W.D.N.Y. 1993)).

Leave to amend may be denied on the basis of futility if the proposed claim would not withstand a Rule 12(b)(6) motion to dismiss. *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). The party opposing the amendment has the burden of establishing its futility. *Blaskiewicz v. Cnty. of Suffolk*, 29 F. Supp. 2d 134, 137-38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

"Although Rule 21, and not Rule 15(a), normally governs the addition of new parties to an action, 'the same standard of liberality' applies under either Rule." *FTD Corp. v. Banker's Trust Co.*, 954 F. Supp. 106, 109 (S.D.N.Y. 1997) (quoting *Fair Hous. Dev. Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)).[14]

---

[14] Rule 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

### B. Discussion[15]

Because the outcome of the ERISA claim may affect the propriety of joining H&R Block as an additional defendant, the Court begins by assessing the viability of the ERISA claim.

### i. ERISA

Plaintiff contends that Defendant violated ERISA by "unlawfully denying Plaintiff its: (1) rightful and lawful federally-sponsored U.S. government COBRA Health Plan, (2) continual document requests and (3) its appeal hearing."  Pl.'s Opp'n at 3.  Liberally construed, Plaintiff's ERISA claim can be read to rest on both sections 1132(a)(1)(A) and (B) of Title 29.  The former authorizes civil actions to recover statutory penalties triggered by a plan administrator's failure to comply with certain information requests within thirty days, while the latter authorizes suits to recover benefits due under the plan.[16]  *See* 29 U.S.C. §§ 1132(a)(1), (c).  The Court will discuss each in turn.

### a. Section 1132(a)(1)(A)

With respect to Defendant's delay in turning over documents, Plaintiff bases his claim, at least in part, on 29 U.S.C. § 1133, which entitles plan participants to certain notice and review

---

[15] As a preliminary matter, Defendant raises a number of arguments asking the Court to deny leave to amend on the grounds of undue delay, prejudice, and failure to submit a proposed amended pleading.  *See* Def.'s Reply Mem. of Law at 5-7.  However, because Plaintiff is proceeding *pro se* and the ERISA claims are based on the same factual allegations underlying the previously asserted claims, the Court declines to deny leave to amend on these bases. Indeed, the current pleadings expressly reference Plaintiff's "legal, rightful and required Federal COBRA health benefits" and include a request for damages based on the denial of these benefits.  Second Am. Compl. at 35, 38. Any prejudice to Defendant is therefore minimized by the fact that it will not be required to defend against a materially different set of factual allegations, but simply against a different legal theory based on those allegations. Again, given Plaintiff's *pro se* status, the Court will not deny leave to amend solely because Plaintiff failed to expressly articulate that alternative legal theory earlier in the proceedings.  For the same reason, the Court denies Defendant's request to award fees and costs.  *See* Def.'s Reply Mem. of Law at 10-11.

[16] Although Plaintiff does not specifically list section 1132(a)(1)(B) among the statutory provisions he seeks to enforce, the allegations are clearly focused on the denial of benefits, and Defendant has briefed the issue on that basis.  *See* Def.'s Reply Mem. of Law at 9-10.

rights.  "However, violations of § 1133 do not give rise to statutory damages under § 1132(c)."

*Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416, 435 (S.D.N.Y. 2005) (citing

*Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 407 (7th Cir. 1996)), *aff'd*, 517 F.3d 614

(2d Cir. 2008); *see also Gates v. United Health Grp. Inc.*, No. 11 Civ. 3487 (KBF), 2012 WL

2953050, at *12 n.15 (S.D.N.Y. July 16, 2012) ("Plaintiff . . . cannot state a claim for statutory

penalties against the plan administrator based on the Plan's alleged failure to provide requested

information in violation of [section 1133].").[17]  Thus, Plaintiff cannot state a claim for statutory

penalties against Defendant, even though the sought-after materials were not turned over within

thirty days.

### b.  Section 1132(a)(1)(B)

"Plan administrators have no individual obligation under ERISA to satisfy judgments for

pension benefits."  *Greater Blouse, Skirt & Undergarment Assn., Inc. v. Morris*, No. 93 Civ.

1257 (SS), 1996 WL 325595, at *4 (S.D.N.Y. June 12, 1996) (Sotomayor, J.).[18]  Plaintiff states,

however, that the ERISA claim is asserted against "Defendant McGladrey, as the <u>Plan</u>

<u>Administrator</u>."  Amendment Letter at 5 (emphasis in original).  The proposed claim can

therefore be reasonably construed as a claim against Defendant, not in its individual capacity, but

---

[17] Section 1132(c) limits statutory penalties to requests for information that the ERISA statute itself expressly requires the administrator to turn over.  29 U.S.C. § 1132(c); *see also, e.g., id.* § 1024(b)(4) (identifying certain items that the administrator is required to furnish to the participant upon request).  To the extent that portions of Plaintiff's arguments can be read to suggest that section 1132(c) is triggered because Defendant violated section 1024(b)(4)—which Plaintiff does not cite specifically—such reasoning fails because the materials he requested do not fall within the scope of section 1024(b)(4).  The Second Circuit has held that that provision is limited to "formal legal documents that govern or confine a plan's operations, rather than the routine documents with which or by means of which a plan conducts its operations."  *Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 142 (2d Cir. 1997).  "[I]ndividual claims determination records do not fit within" the category of documents the administrator is required by statute to turn over.  *Medoy v. Warnaco Emps.' Long Term Disability Ins. Plan*, 43 F. Supp. 2d 303, 310 (E.D.N.Y. 1999).

[18] In *Greater Blouse*, then-Judge Sotomayor explicitly contrasted this non-liability for benefits with the administrator's individual liability under section 1132(c), discussed above.  *See* 1996 WL 325595, at *4.

rather in its capacity as plan administrator. Such a suit is cognizable. *See Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989) ("In a recovery of benefits claim, only the plan *and the administrators* and trustees of the plan *in their capacity as such* may be held liable." (emphasis added)); *see also Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) (indicating that an employer cannot be held liable for benefits under section 1132(a)(1)(B) unless it is the designated plan administrator).[19]

Defendants maintain that any ERISA claim for the denial of COBRA benefits is time-barred. *See* Def.'s Reply Mem. of Law at 9-10. Because ERISA does not contain a statute of limitations, "the applicable limitations period is 'that specified in the most nearly analogous state limitations statute.'" *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (quoting *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983)). In this context, the applicable New York statute of limitations provides a six-year limitations period, but that period may be shortened by the terms of the applicable plan. *See id.* The benefits plan at issue provides that suits must be brought "within three years of the date you are notified of our final decision on your appeal." Affirmation of Carlos L. Lopez in Further Supp. (Doc. 38) Ex. 1, at 77.[20] Thus, according to Defendant, the suit had to be brought within three years of the November 4, 2009

---

[19] While the claim is cognizable against Defendant as administrator, it is futile to the extent that Plaintiff seeks to hold H&R Block liable as plan sponsor. *See Esden v. Bank of Boston*, 5 F. Supp. 2d 214, 217 (D. Vt. 1998) (citing *Crocco v. Xerox Corp.*, 137 F.3d 105 (2d Cir. 1998)) (holding that a recovery-of-benefits suit under ERISA must be dismissed as against the plan sponsor as a matter of law).

[20] Because Plaintiff only included excerpts from the plan in Exhibit M to the Amendment Letter, the Court cites to the full version of the document filed by Defendant. *Cf. Hoy v. Inc. Vill. of Bayville*, 765 F. Supp. 2d 158, 163-64 (E.D.N.Y. 2011) (noting that, in the Rule 12(b)(6) context, courts may refer to "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint" (quoting *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003))).

letter informing Plaintiff that the denial of his COBRA benefits had been upheld—in other words, by November 4, 2012.

Defendant's argument fails because the November 4, 2009 letter does not purport to be a final decision on Plaintiff's appeal; to the contrary, it expressly advises Plaintiff of his entitlement to *additional* review procedures.  *See* Second Am. Compl. Ex. L.  Thus, the statute of limitations did not begin to run upon Plaintiff's receipt of the letter.  Instead, the relevant question is the one Defendant identifies in the footnote to its ERISA discussion—namely, whether the claim is precluded because Plaintiff failed to exhaust the administrative review process provided by the plan.  *See* Def.'s Reply Mem. of Law at 10 n.3.  Because the Court is unable to make that determination as a matter of law, Plaintiff's claim will be allowed to go forward.

As a general rule, "[a] participant's cause of action under ERISA . . . does not accrue until the plan issues a final denial."  *Heimeshoff v. Hartford Life & Accident Ins. Co.*, --- U.S. ---, 134 S. Ct. 604, 610 (2013).  Thus, administrative remedies provided under the plan must be exhausted prior to bringing suit.  *See Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 107 (2d Cir. 2003) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 511 (2d Cir. 2002)).  However, the Department of Labor's ERISA regulations provide an exception:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant *shall be deemed to have exhausted the administrative remedies available under the plan* and shall be entitled to pursue any available remedies under section [1132(a)] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503–1(*l*) (emphasis added).[21]

Failure to exhaust is an affirmative defense that the Defendant is responsible for establishing.  *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 446 (2d Cir. 2006).  Here, the documents included in the pleadings do not conclusively establish that Plaintiff's COBRA application and subsequent requests for review were handled in accordance with the regulatory requirements.  Rather, much of what is included in the pleadings suggests that section 2560.503–1(*l*)'s deemed exhaustion rule may apply in this case.

For example, the letter Plaintiff received on July 14, 2009 stated simply that his COBRA application was erroneously provided to him in the first place.  *See* Second Am. Compl. Ex. M.  Plaintiff appealed on August 16, 2009 and received the November 4, 2009 letter in response.  In its reply brief, Defendant clearly treats the July 14 letter as the initial determination, with the November 4 letter functioning as a review of that prior decision.  *See* Def.'s Reply Mem. of Law at 9.  The ERISA regulations, however, require that any initial notice of an adverse benefit determination include specified information, including "[r]eference to the specific plan provisions on which the determination is based" and "[a] description of the plan's review procedures."  29 C.F.R. § 2560.503–1(g).  The July letter did not do so.  Moreover, while the November 4 letter references Plaintiff's right to "[a] review of [his] claim that takes into account all comments, documents, records and other information submitted by [Plaintiff] relating to the claim,"  Second Am. Compl. Ex. L, the pleadings are replete with allegations indicating that an extended period of time passed—and a lawyer's intervention was required—before Plaintiff was

---

[21] While the Second Circuit has yet to indicate whether *substantial* compliance with the regulatory requirements will suffice, *see Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 223 n.10 (2d Cir. 2006), courts within the Circuit have held that *actual* compliance is required.  *See Gates v. United Health Grp. Inc.*, No. 11 Civ. 3487 (KBF), 2012 WL 2953050, at *13 (S.D.N.Y. July 16, 2012).

actually able to receive the documents and information he was seeking.  And, while the regulations provide time limits of either fifteen or thirty days, depending on the type of claim at issue,[22] within which an appeal must be decided under a group health plan, *see* 29 C.F.R. § 2560.503–1(i)(2), here nearly three months passed between Plaintiff's appeal and Defendant's response.  Thus, at least based on the documents currently before the Court and the manner in which the case has been argued, it seems plausible to infer that the administrative process should be deemed exhausted in this instance.[23]

Because there is enough in the pleadings to establish at least a plausible claim for benefits under section 1132(a)(1)(B), Plaintiff will be granted leave to amend his pleadings to interpose such a claim.[24]

---

[22] The fifteen- and thirty-day time periods apply to group health plans, like the one at issue here, that allow for two levels of appeal.  *See* 29 C.F.R. § 2560.503–1(i)(2); *see also* Affirmation of Carlos L. Lopez in Further Supp. (Doc. 38) Ex. 1, at 55-56 (providing for two levels of appeal and indicating that decisions will be received within fifteen or thirty days).

[23] The Court does not have the benefit of a full evidentiary record and therefore declines to make a definitive ruling on whether Plaintiff's claim should be deemed exhausted.  However, because Defendant bears the burden of establishing futility, and because failure to exhaust is an affirmative defense, the ERISA claim will be allowed to go forward.

[24] To the extent that Plaintiff intends to allege a claim directly under section 1133, based on the alleged non-compliance with the ERISA regulations, such a claim would not provide Plaintiff with access to any of the monetary redress he seeks.  *See Smith v. Champion Int'l Corp.*, 220 F. Supp. 2d 124, 128-29 (D. Conn. 2002) ("Defendant correctly notes that § 1133 does not give rise to a private cause of action for compensatory or punitive relief." (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985))).  Rather, a section 1133 claim is proper where the plaintiff seeks equitable relief, such as remand to the plan administrator.  *See Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008) ("A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review."); *Champion Int'l Corp.*, 220 F. Supp. 2d at 129 ("[T]he usual remedy for a violation of § 1133 would be equitable in nature, such as remanding plaintiffs' claims for benefits to the [plan] administrator or fiduciary for a 'full and fair' review."); *see also Nahoun v. Emps.' Pension Plan of Credit Suisse First Boston*, No. 04 Civ. 9221 (LAK), 2005 WL 1476453, at *2 n.11 (S.D.N.Y. June 22, 2005) (noting that section 1133 "does not create a private right of action" and that the claim should instead be asserted as one for equitable relief under section 1132(a)(3)).  At present, Plaintiff is not asking the Court to remand the proceedings for further review by the plan administrator, but instead is attempting to assert a claim for monetary relief under section 1132(a).  In other words, the current pleadings do not suggest that Plaintiff is seeking equitable relief from the perceived procedural inadequacies themselves, but rather that he is focused exclusively on obtaining

### ii.   H&R Block

All of Plaintiff's existing claims against Defendant having been dismissed (and the

section 1132(a)(1)(B) claim being non-cognizable as against the plan sponsor), there is no need

to inquire further into the propriety of joining H&R Block as an additional defendant.  Because

Plaintiff seeks to hold H&R Block liable for the same misconduct alleged against Defendant, it

necessarily follows that the defects in Plaintiff's claims against Defendant are equally fatal as

against H&R Block.  The motion to amend is therefore denied to the extent that it seeks to join

H&R Block as a co-defendant.

## V.      Conclusion[25]

For the reasons set forth above, Defendant's motion to dismiss is GRANTED, and

Plaintiff's motion to further amend his complaint is GRANTED in part and DENIED in part.  All

Title VII, EPA and NYSHRL claims are dismissed, and Plaintiff is denied leave to add H&R

Block as a party or to allege claims for statutory penalties under 29 U.S.C. §§ 1132(a)(1)(A) and

_____

*monetary* relief for the denial of COBRA benefits that, according to Plaintiff, those procedural inadequacies helped perpetuate.  That said, should Plaintiff desire that the Court remand the matter to the plan administrator, there is nothing to stop Plaintiff from bringing a section 1133 claim.  *See Staten Island Chiropractic Assocs., PLLC v. Aetna, Inc.*, No. 09 Civ. 2276 (CBA) (VP), 2012 WL 832252, at *13 (E.D.N.Y. Mar. 12, 2012) (dismissing a section 1133 claim because the plaintiff sought only monetary relief, but clarifying that the dismissal was without prejudice because the plaintiff remained free to seek remand as a remedy).  Plaintiff may also allege a breach of fiduciary duty claim under section 1132(a)(3), though the Court notes that such a claim would be limited to "equitable relief for injuries caused by violations that [section 1132] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); *see Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89-90 (2d Cir. 2001) (countenancing concurrent claims under sections 1132(a)(1)(B) and (a)(3)).

[25] By letter dated May 5, 2014, Plaintiff requested oral argument on the instant motions.  The Court notes that Plaintiff has previously submitted an array of materials in support of his claims and in opposition to the motion to dismiss.  As noted above, the Court has thoroughly reviewed all of Plaintiff's submissions—as well as each exhibit to each of those submissions—in rendering its decision.  However, no amount of evidentiary support can overcome the legal barriers that operate to defeat the claims that have been dismissed.  The Court therefore finds that no further benefit is to be derived from additional argument at this time.  For that reason, Plaintiff's request for oral argument is denied.

(c).  Plaintiff is granted leave to interpose a claim against Defendant, in its capacity as plan administrator, to recover benefits under 29 U.S.C. § 1132(a)(1)(B).  To the extent he desires to pursue alternative forms of redress, Plaintiff is also granted leave to file ERISA claims of the kind discussed in note 24.

Plaintiff is directed to file his Third Amended Complaint by **October 31, 2014**.  That complaint is to be limited to the allegations necessary to support the section 1132(a)(1)(B) claim or the aforementioned claims for alternative relief under ERISA.  The complaint should identify Defendant by its proper name (McGladrey, LLP) and should name Defendant solely in its capacity as plan administrator.

The Clerk of the Court is respectfully directed to (1) update the case caption so that Defendant is properly identified as McGladrey, LLP and (2) terminate the pending motion (Doc. 30).

It is SO ORDERED.

Dated:      September 24, 2014
            New York, New York

                                        Edgardo Ramos, U.S.D.J.